UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GEOSTAR CORP., and WEST VIRGINIA
GAS CORP.,

        Plaintiffs,

                                     Case Number 07-12854-BC
v.                                     Honorable Thomas L. Ludington

GASTAR EXPLORATION LTD., and
J. RUSSELL PORTER,

        Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GASTAR CORPORATION'S MOTION TO DISMISS AND FOR MORE DEFINITE STATEMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANT J. RUSSELL PORTER'S MOTION TO DISMISS

Defendant Gastar Exploration Limited's ("Gastar") and Defendant J. Russell Porter's ("Porter," collectively "Defendants") motions to dismiss or for more definite statement under FED. R. CIV. P. 12 are before the Court. Plaintiffs Geostar Corporation ("Geostar") and West Virginia Gas Corporation ("WVGC," collectively "Plaintiffs") filed a six count complaint alleging causes of action for tortious interference with contract (Count I), breach of an oral contract (Count IV), unjust enrichment (Count V), and breach of contract (Count VI). Additionally, Plaintiffs' complaint also alleged an additional breach of oral contract claim (Count II) and sought to enjoin arbitration proceedings initiated by Gastar (Count III).[1]

---

[1] Gastar initiated arbitration proceedings in Houston, Texas on October 18, 2006. Gastar seeks to resolve disputes arising out of the June 15, 2001 Participation and Operation Agreement ("POA"). Geostar contends in their amended complaint that the parties cancelled the POA, including the incorporated arbitration provision, prior to the arbitration demand in 2005. Plaintiffs agreed, however, to dismiss Count II (enjoin arbitration) and Count III (breach of an oral contract) without prejudice to determine whether the arbitration would satisfactorily resolve the dispute underlying Counts II and III.

Gastar's motion seeks to dismiss Plaintiffs' tortious interference claim (Count I), and breach of contract claim (Count VI) for lack of personal jurisdiction over Gastar pursuant to Fed. R. Civ. P. 12(b)(2) and improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Additionally, Gastar contends that the Court should dismiss the tortious interference claim (Count I), the breach of oral contract claim (Count IV), and the unjust enrichment claim (Count V) for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or compel plaintiffs to provide a more definite statement with respect to those counts pursuant to Fed. R. Civ. P. 12(e). Alternatively, Gastar contends that the Court should dismiss the breach of contract claim (Count VI) for failure to join indispensable parties pursuant to Fed. R. Civ. P. 12(b)(7).

For the reasons stated below, the Court will **GRANT** Gastar's motion in part for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) with respect to Counts I, IV and V. The Court will **DENY** Gastar's motion to dismiss for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), improper venue, Fed. R. Civ. P. 12(b)(3), and failure to join indispensable parties, Fed. R. Civ. P. 12(b)(7). The Court will **DENY** Gastar's motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e) as moot.

Porter's motion contends that the Court should dismiss the tortious interference claim (Count I) for lack or personal jurisdiction, Fed. R. Civ. P. 12(b)(2), improper venue, Fed. R. Civ. P. 12(b)(3), and failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). Porter also raised various challenges to Counts IV, V, and VI. Plaintiffs acknowledged in their opposition brief that Porter is named as a defendant with respect to Count I only. See Dkt. # 18 at 1. As such, the Court will **GRANT** Porter's motion to dismiss with respect to Counts IV, V, and VI. Additionally, the Court will **GRANT** Porter' motion to dismiss for failure to state a claim, Fed.

R. Civ. P. 12(b)(6), with respect to Geostar for the reasons stated below.  On the other hand, the Court concludes that Porter is subject to jurisdiction in Michigan courts, that the Eastern District of Michigan is a proper venue to hear the action, and that WVGC sufficiently sets forth a claim against Porter.  Thus, the Court will **DENY** Porter's motion to dismiss Count I of the complaint against WVGC.

I

Geostar is a privately held corporation with its principal place of business located in Mt. Pleasant, Michigan.  It is incorporated under the laws of Delaware.  Geostar owns interests in oil, gas, coal mine methane, and brown coal projects in West Virginia, Wyoming, California, Texas, and Australia.  Geostar was founded by Thom Robinson ("Robinson") approximately twenty years ago.  Robinson served as Geostar's President from its inception.  Robinson has also served in the position of Geostar's CEO and Chairman of the Board for the relevant time periods.  Geostar is a relatively small company, employing approximately twenty-five employees in its Mt. Pleasant headquarters.

In 2000, a consortium of unidentified individuals coordinated a "reverse merger" of CopperQuest, an Alberta, Canada company, to form Defendant Gastar.  Included in this consortium was Geostar's President, CEO, and Chairman Robinson.  Apparently, Robinson drove Gastar's formation in order to raise public funds to expedite what he believed to be an expansive natural gas deposit in Texas.  The parties' briefs do not suggest whether this opportunity was considered by Geostar's board of directors or stockholders, or otherwise even within its field of business.  Due to the likely expense of the project, it is suggested, Gastar was formed as a vehicle to generate public capital.  Unlike Geostar, Gastar was organized as a publically traded company listed on the American Stock Exchange and Toronto Stock Exchange, subject to regulation as such.  At the time

of Gastar's formation, Geostar owned "a significant" but otherwise unidentified amount of its stock. Apart from that information, the parties' briefs included little specific information about the ownership of Geostar or Gastar, nor were counsel able to address same at oral argument. With its formation, Robinson held the positions of Gastar's President, CEO, and Chairman concurrent with his positions at Geostar. Counsel were also unaware of whether there was any attention given to the potential for conflicts of interest between Robinson's principals.

WVGC is a subsidiary of Geostar engaged in drilling projects in the state of West Virginia and Pennsylvania. It is also a Delaware corporation with its principal place of business in Mt. Pleasant, Michigan. Robinson also has served as WVGC's President from its inception.

On June 15, 2001, Geostar and Gastar executed a Purchase and Operating Agreement ("POA") for the purpose of engaging in joint exploration ventures. According to Geostar's counsel, Robinson executed the agreement on behalf of Geostar and an unidentified agent for Gastar signed the POA on its behalf. Additionally, Geostar's counsel indicated that, despite the conflict of interests inherent to Robinson's role as chief executive of both Gastar and Geostar, it was believed that the transaction was negotiated at arms length and reviewed by an external reviewer.

The POA governed relationship between Geostar and Gastar with respect to projects directed at the discovery of coalbed methane. According to the amended complaint, one of the companies would serve as "operator" of a various project, while the other company would pay a portion of the expenses and assume an agreed upon share of the risk or proceeds. Under the POA, Gastar was required to fund its agreed upon share of the project's drilling costs, future costs, authorized expenditures, and Geostar's previous expenditures. The companies operated under the POA until the end of 2004.

According to Geostar's counsel, independent accountants at BDO Dunwoody recommended that Gastar and Geostar alter their relationship due to changes in the accounting guidelines for public companies in the United States and Canada in late 2004. The recommended changes included cancelling the POA and other agreements in order to avoid forced consolidation by the government or consolidated financial treatment. Geostar contends that the parties cancelled the POA, effective January 1, 2005. Geostar alleges that the parties attempted to replace the POA with a new agreement, however, they were unsuccessful for the most part at reaching new terms. Though the parties executed an agreement for the joint operation of a single Texas property, the parties continued to operate without a formal agreement with respect to all other joint projects.

In October of 2006, Gastar submitted an arbitration demand in Houston, Texas arising from a dispute under the POA. Geostar filed the instant complaint, seeking to enjoin the arbitration (Count II) and seeking to recover for breach of oral contract (Count III) as a result of the parties' relationship after the parties allegedly cancelled the POA. At oral argument, counsel for Geostar represented that it was willing to dismiss Counts II and III in light of the apparent success of the arbitration proceedings. Subsequently, the parties submitted a stipulation dismissing Counts II and III without prejudice, which the Court accepted in a December 12, 2007 order. Dkt. # 29.

Plaintiffs allege in Count I of the amended complaint that Defendants tortiously interfered with a WVGC contract. Allegedly, WVGC entered into an agreement ("Spartan Contract") with Spartan Exploration, Inc., Milton Otteman, and Scott McAlpin (collectively "Spartan") to form an area of mutual interest between the parties. The area of mutual interest was comprised of Spartan's and WVGC's gas and oil rights in West Virginia and Pennsylvania. Under the Spartan Contract, WVGC had the right of refusal of any gas or oil opportunity discovered by Spartan in West Virginia

or Pennsylvania to WVGC.

Gastar hired Porter as COO in September of 2000. Apparently, Porter served as a vice-president for Geostar, during this period as well. Porter served in both capacities until February of 2004 when Robinson stepped down as President and CEO of Gastar due to illness. Porter resigned his position as a vice-president at Geostar and replaced Robinson as Gastar's President and CEO.

According to the amended complaint, Porter began to interfere with the Spartan Contract in November of 2004 by influencing one Milton Otteman. Allegedly, Porter used his own time, money, and expertise to establish Bengal Resources LLC ("Bengal"), a West Virginia Limited Liability Corporation, for the purposes of usurping WVGC's gas and oil opportunities from the Spartan Contract. Porter allegedly owns a fifty percent interest in Bengal and serves as its CEO and President. Otteman allegedly serves as its COO and manager, though, again, little additional information is furnished concerning its ownership or its management. Additionally, Geostar alleges Porter "personally benefitted" from the breach.

Additionally, Geostar seeks reimbursement for services rendered to Gastar and various expenses paid by Geostar, separate and apart from the POA or other agreements. Geostar contends Gastar's refusal to reimburse Geostar breached an oral contract ("Count IV"), or in the alternative, that Geostar should be reimbursed under the equitable remedy of quantum meruit ("Count V").

Finally, Geostar alleges that Gastar breached a contract entered into on June 16, 2005. Allegedly, the parties executed a series of Purchase and Sale Agreements and Assignments of Interests ("PSA"), which Geostar contends Gastar breached. According to the complaint, Geostar sold and assigned properties in east Texas that the parties believed contained a large quantity of natural gas. Under the PSA, Gastar and Geostar agreed that the payment in consideration for the

property would depend on the amount of natural gas found under the property. Allegedly, Gastar contended that the property contained low quantities of natural gas such that Geostar owed Gastar additional payment under the PSA. Geostar alleges that Gastar miscalculated (perhaps intentionally) the amount of natural gas and breached the PSA by not drilling the twenty required wells.

Geostar seeks more than $20,000,000.00 of compensatory damages, specific performance awarding a "farm-in" interest of the real property rights, and, in the alternative, rescission of the PSA.

From its inception, Gastar conducted business from the same Mt. Pleasant building as Geostar. According to Porter's affidavit, Gastar's headquarters and principal place of business were located in Mount Pleasant, Michigan from September 2000 until February of 2004. During this period, Porter was Gastar's COO. In February of 2004, Porter became president, chief executive officer, and a director. Porter performed his duties from an office in Florida. Gastar continued to be headquartered in Mt. Pleasant. Porter traveled to Michigan on a quarterly basis, exclusively for Gastar related business. Porter's affidavit states that Gastar relocated its headquarters and principal place of business to Houston, Texas in March of 2005.[2] Since that time, Gastar has not owned any real property in Michigan. Gastar has not owned any bank accounts with a Michigan situated bank since the end of 2006.

In opposition to Defendants' Rule 12 challenges, Plaintiffs submitted the affidavits of Robinson and Fred Lambert ("Lambert"). Lambert has been Geostar's controller since 1997. Additionally, to flesh out the apparent commonality of the enterprises, Lambert was also Gastar's

---

[2] In Porter's affidavit, he states that Gastar's headquarters and principal place of business was located in Mt. Pleasant, Michigan from September of 2000 to February of 2004. Dkt. # 5, Ex. 3 at ¶ 3. Porter then states that Gastar relocated its headquarters and principal place of business to Houston, Texas in March of 2005. *Id.* at ¶

controller from May of 2000 until February 2005 and its CFO from February through May of 2005.

According to Robinson's affidavit, Robinson served as Gastar's President and CEO from its inception until June of 2005. Robinson served as Gastar's Chairman of the Board until June of 2006. Robinson's affidavit states that Gastar's principal place of business was located in Mt. Pleasant, Michigan from June of 2000 until June of 2005. Robinson states that Gastar began the PSA negotiations in Michigan and retained Michigan counsel in preparation to close the transaction. Robinson's affidavit states Gastar "began the process" of relocating its principal place of business to Texas in the middle of 2005, but continued to maintain business records, bank accounts, administrative activities, and information technology services in Michigan until early 2006.

According to Lambert's affidavit, Gastar and Geostar utilized the same building as their respective headquarters during that period. Gastar employed Lambert, as well as others in Michigan, to perform accounting and administrative services through 2006. Lambert's affidavit states Gastar's "regular contacts" with him regarding the PSA, included phone calls, e-mails, and written correspondences. This includes over 1,300 e-mails with Gastar's CFO, Michael Gerlich, between May of 2005 and early 2007. Many of those e-mails concerned Geostar's assistance in the preparation of Gastar's financial statements.

With respect to Porter, Robinson's affidavit states that Porter's responsibilities, as a Geostar vice-president, included conducting and managing Geostar business. Though Porter did not regularly work in Michigan, he traveled to Michigan for Geostar business when necessary. These trips to Michigan included travel for Geostar's Board of Directors meetings, strategy, audit and business development meetings. Additionally, Porter's duties as Geostar's vice-president included acting as a land manager for WVGC's projects. After Porter became President and CEO of Gastar, Porter

contacted Robinson multiple times daily regarding business between the two companies.

Additionally, Lambert's affidavit recounts that Porter attended meetings in Michigan, conducted business through Gastar's Mt. Pleasant headquarters, and visited the facilities more than a dozen times. Lambert's affidavit states that Porter "regularly and frequently" visited Geostar facilities from 2000 through 2007. Lambert's affidavit states that Porter visited Mt. Pleasant as recently as January 2007. Additionally, Lambert's affidavit states that he received 2,100 e-mails from Porter between March of 2004 and June of 2007.

Finally, Porter's affidavit states that there are four parties that possess ownership interests in the real property that is the subject of the PSA. According to Porter, Geostar and Gastar affiliates entered into contracts disposing of interests in the Texas property. Gastar Exploration Texas, LP, a Delaware limited partnership, attained an interest. Gastar Exploration, LLC, a Delaware limited liability company, is general partner of Gastar Exploration Texas, LP. Next, Presco, Inc., a Delaware corporation, received assignment interests in certain leases that were the subject of the conveyance to Gastar Exploration, LP. Chesapeake Exploration, LP, an Oklahoma limited partnership, also acquired an interest in some of the leases that were the subject of the conveyance to Gastar Exploration Texas, LP. Finally, Navasota Resources, LP, a Texas limited partnership, also acquired an interest by virtue of oil and gas leases.

Gastar moved to dismiss Plaintiffs' complaint alleging that the Court lacks personal jurisdiction over it (Counts I and VI), the Eastern District of Michigan is an improper venue for this action (Counts I and VI), Plaintiffs' complaint fails to state a claim (Counts I, IV, and V), and Plaintiffs failed to join an indispensable party (Count VI ). Alternatively, Gastar moves for a more definite statement with respect to Counts I, IV, and V.

Porter moved to dismiss Count I of the complaint contending the Court lacks personal jurisdiction over him, the Eastern District of Michigan is an improper venue , and Plaintiffs failed to state a claim upon which relief can be granted. Alternatively, Porter moves for a more definite statement with respect to Count I.[3]

## II

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure and allow a Court to dismiss a matter for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1965 (2007) (citations omitted); *see also Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) ("[W]hile liberal, this standard of review does require more than the bare assertion of legal conclusions."). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption

---

[3]As discussed above, Plaintiff presented various challenges with respect to Counts II, III, IV, V, and VI, which Plaintiffs acknowledge that Porter is not named as a defendant. As such, the Court will only consider Porter's arguments with respect to Count I.

that all the allegations in the complaint are true (even if doubtful in fact)." *Twombley*, 127 S.Ct. at 1965, (Citations omitted). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

### III

### A

Gastar moved to dismiss Counts I, IV, and V for failure to state a claim. Gastar contends that Count I does not contain any allegations that Gastar committed any act of intentional interference with the Spartan contract. With respect to Counts IV and V, Gastar asserts that the allegations are conclusory and lack the requisite specificity.

The Court has subject matter jurisdiction over the matter due to the parties' diversity of citizenship. 28 U.S.C. § 1332. State substantive law governs diversity actions. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

In Michigan, to establish a tortious interference with contractual relations claim, a plaintiff must plead that "the defendant instigated an unjustified breach of contract." *CMI Intern., Inc., v. Intermet Intern. Corp.,* 649 N.W.2d 808, 812 (Mich. Ct. App. 2002); See also *Badiee v. Brighton Area Schools*, 695 N.W.2d 521, 539 (Mich. Ct. App. 2005). To establish that a defendant instigated the breach, a plaintiff must allege the defendant engaged in "intentional wrongdoing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights." *CMI Intern.*, 649 N.W.2d at 812. "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the

unlawful purpose of interference." *Id.* (citation omitted).

Upon review of the allegations set forth in Count I of the complaint, Plaintiffs do not meet their burden, in part, to explain their grounds for their request for relief. Plaintiffs allege that Porter, Gastar's C.E.O., "embarked on a fraudulent and deceptive scheme" to induce a breach of contract between a third party and WVGC. *Amended Complaint* at ¶ 16. Plaintiffs further allege that Porter created Bengal in order to personally benefit from the breach. *Id.* at 18. Moreover, Plaintiffs did not allege any specific benefit for Gastar.

Plaintiffs allege that Porter instigated the breach of contract for his own benefit. Plaintiff Geostar does not contend that Gastar benefitted from Porter's alleged interference with the Spartan Contract. In Count I, Plaintiffs refer to Gastar as Porter's employer. Additionally, Plaintiffs allege that Porter signed a Gastar check as part and parcel of the fraudulent actions. Beyond those tangential references to Gastar, Plaintiffs do not allege that Gastar performed a wrongful or malicious act to instigate a breach or even any benefits derived by Gastar. Plaintiffs do not allege that Gastar instigated the breach for Gastar's benefit. Instead, the complaint alleges that Porter personally owned Bengal for the purposes of usurping WVGC's opportunities. Moreover, the complaint alleges that Porter utilized his own time, expertise, and money to create and run Bengal. The Court concludes that Plaintiffs have insufficiently alleged facts to state a claim with respect to Gastar. Thus, the Court will grant Gastar's motion to dismiss for failure to state a claim with respect to Count I.

Additionally, Porter moved to dismiss Count I for failure to state a claim with respect to Geostar as a plaintiff because Geostar was not a party to the contract. "In Michigan, the law treats a corporation as entirely separate from its shareholders, even where one person owns all the

corporate stock." *Belle Isle Grill Corp., v. City of Detroit*, 666 N.W.2d 271, 279 (Mich. Ct. App. 2003) (citing *Industrial Steel Stamping, Inc. v. Erie State Bank*, 423 N.W.2d 317, 319 (1988)). "The doctrine of standing provides that a suit to enforce corporate rights or to redress or prevent injury to a corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee." *Belle Isle*, 666 N.W.2d at 279 (citing *Michigan Nat'l Bank v. Mudgett*, 444 N.W.2d 534, (1989)).

Plaintiffs alleged that WVGC, a subsidiary of Geostar, was a party to the contract. Beyond that allegation, Plaintiffs did not allege that Geostar was a party to the contract or injured by the breach. Under Michigan law, a shareholder may not assert the rights of a separate corporate entity. Thus, Geostar's claim against Porter should be dismissed for failure to state a claim.

Next, Gastar moved to dismiss Counts IV and V for failure to state a claim. Under Michigan law, "to plead a breach of contract properly . . . a plaintiff must state three elements: (1) the existence of a contract between plaintiff and defendant, (2) a breach, and (3) damages." *Hall v. State Farm Mut. Auto. Ins. Co.,* 215 Fed, Appx. 423, 428 (6th Cir. 2007). To establish a claim for unjust enrichment under Michigan law, a plaintiff must establish "(1) the receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375, 509 N.W.2d 791 (1993).

Gastar contends that Plaintiffs "conclusorily allege[d] the existence of oral contracts purportedly breached by Gastar, but Plaintiffs fail to make any factual allegations concerning the facts giving rise to the formation of any oral contracts, the terms of those contracts, and in particular, the terms allegedly breached." *Dkt. # 5* at 13. Upon review of Counts IV and V, the Court finds that

Plaintiffs have not met their burden under *Twombley*, 127 S.Ct. at 1965, to adequately plead their causes of action. Count IV alleges that Plaintiffs and Gastar entered into an oral contract for the use of services and equipment in return for "Porter's and Gastar's promises" to reimburse Plaintiffs. Count V simply incorporates Count IV's allegations and offers an alternative legal theory for recovery. Though both Count IV and V allege the basic elements of the causes of action, neither includes the requisite factual specificity required to adequately inform Defendants of the substance of their allegations. Therefore, the Court will grant Gastar's motion to dismiss for failure to state a claim with respect to Counts IV and V.

## B

Gastar brought its motion challenging the Court's jurisdiction over it with respect to Count I and VI. Gastar contends that the Court does not have general personal jurisdiction over Gastar because it has not had any offices within the state since March of 2005. Additionally, Gastar asserts that the events that give rise to this litigation occurred after it severed its continuous and systematic contacts with Michigan. Likewise, Porter contends that he is not subject to this Court's jurisdiction over him with respect to Count I.

The burden is on a plaintiff to demonstrate the Court has personal jurisdiction over a defendant. *CompuServe, Inc., v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citation omitted). In deciding "a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery . . . or it may conduct an evidentiary hearing . . ." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "When, however, a district court rules on a jurisdictional motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, the court

must consider the pleadings and affidavits in a light most favorable to the plaintiff . . . To defeat such a motion, a party in [the plaintiff's] position need only make a prima facie showing of jurisdiction. *Compuserve*, 89 F.3d at 1262 (citations omitted). The plaintiff's burden, however, is "relatively slight" in the absence of a evidentiary hearing. *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (citation and internal quotation omitted).

In order to sufficiently establish personal jurisdiction in a matter based on diversity of citizenship, the plaintiff must demonstrate that the Court has personal jurisdiction over the defendant under the state's long-arm statute and that exercising jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 888 (6th Cir. 2002) (citation omitted). The Michigan long-arm statute permits a court to exercise both limited and general personal jurisdiction. As the Sixth Circuit in *Neogen* explained:

> Limited jurisdiction extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect. General jurisdiction, on the other hand, enables a court in Michigan to exercise jurisdiction over a corporation regardless of whether the claim at issue is related to its activities in the state or has an in-state effect.

*Id.* If a plaintiff establishes a court's personal jurisdiction through limited or specific jurisdiction, a court must find a basis to exercise jurisdiction over the defendant with respect to each individual claim. *Preferred RX, Inc. v. American Prescription Plan, Inc.,* 46 F.3d 535, 550-51 (6th Cir. 1995).

Under § 600.711, general personal jurisdiction exists over a corporation if it carries on "continuous and systematic general business within the state." Mich. Comp. Laws § 600.711(3). Additionally, a corporation is subject to limited personal jurisdiction in Michigan if it transacted any business within the state. Mich. Comp. Laws § 600.715(1). Michigan's long-arm statute, with respect to individuals, authorizes the Court to exercise limited personal jurisdiction over an

individual's business transaction within the state, an individual "doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort," or an individual acting as a director or officer of a corporation incorporated in or with its principal place of business in Michigan. Mich. Comp. Laws § 600.705. A fellow district court noted that the Michigan long-arm statute is "extraordinarily easy to meet." *Fisher v. Blackmore*, 325 F.Supp. 2d 810, 814 (E.D. Mich. 2004) (exercising personal jurisdiction over a defendant based on the plaintiff's allegations that an out-of-state defendant made misrepresentations to induce action by plaintiff that led to in-state monetary harm to the plaintiff).

The second step of the analysis is to determine whether the defendant has "sufficient 'minimum contacts' with Michigan so that the exercise of jurisdiction over [the defendant] would not offend 'traditional notions of fair play and substantial justice.'" *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 889 (6th Cir. 2002); (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). A court is to evaluate whether the defendant "purposely availed" itself of the privilege of conducting activities with the forum state, which "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Neogen*, 282 F.3d at 889 (internal quotations and citations omitted).

Michigan's long-arm statute provides an adequate basis for the Court to exercise general personal jurisdiction over Gastar, as it establishes personal jurisdiction over a corporation if it undertakes "continuous and systematic general business within the state." Mich. Comp. Laws § 600.711(3). Gastar operated its headquarters and principal place of business within Michigan as late as March of 2005. The Court finds that Gastar's Michigan roots are a sufficient basis to exercise

"general" personal jurisdiction over Gastar.

Gastar contended that its past contacts with Michigan do not sufficiently establish the Court's personal jurisdiction over it presently. Specifically, Gastar relied on a Second Circuit holding that "[i]n general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances–up to and including the date the suit was filed–to assess whether they satisfy the continuous and systematic standard." *Metropolitan Life Ins. Co., v. Robertson-Ceco Corp.,* 84 F.3d 560, 569-570 (2d Cir. 1996) (internal quotations and citations omitted). The inquiry into personal jurisdiction is "fact-intensive, and the appropriate period for evaluating a defendant's contacts will vary in individual cases." *Id.* Though Gastar contends that *Metropolitan Life* should persuade this Court to find that Gastar is not subject to general personal jurisdiction in Michigan, the Court concludes otherwise. By operating its headquarters and principle place of business in Michigan, Gastar sought and obtained important contacts to Michigan. Gastar relied on Michigan's laws for protection and to its benefit, and does not instantaneously remove Michigan courts' jurisdiction over it by relocating its headquarters and principle place of business to another state.

Alternatively, the Court finds that it may exercise specific personal jurisdiction over Gastar with respect to Count I. Until March of 2005, Gastar's headquarters and principal place of business was located in Michigan. Porter's affidavit indicates that Gastar severed most of its ties to Michigan at that point, and completely ended all connections by the end of 2006. Plaintiffs allege, however, that Porter, as an officer of Gastar, initiated the tortious conduct outlined in Count I in November of 2004. At that time, Gastar still held their principal place of business in Michigan and would be subject to specific personal jurisdiction arising out of these actions within Michigan.

Count VI relates to a separate agreement between the parties entered into in June of 2006. At that point, Gastar had relocated its headquarters and principal place of business to Houston, Texas. Robinson's affidavit stated that the parties began negotiating the subject matter of the contract in Count VI in 2005. *Dkt. # 17-3* at ¶ 10. These contacts meet the minimal requirements of Michigan's long-arm statute.

Porter contends that the Court does not have general or limited jurisdiction over him with respect to Count I. Under Michigan's long-arm statute, Plaintiffs' allegations sufficiently establish the Court's jurisdiction over Porter. First, Plaintiffs alleged that Porter began his tortious acts in or about November of 2004. Gastar's principal place of business and headquarters were in Michigan until March of 2005. Plaintiffs alleged, and Porter acknowledges, that Porter was Gastar's CEO, President, and director at the time of the tortious interference. Under § 600.705(6), the Court has personal jurisdiction over an individual that is an officer or director of a corporation with its principal place of business within the state. Thus, Porter's status as an officer of a corporation with its principal place of business in Michigan establishes the Court's jurisdiction.

Additionally, Plaintiffs alleged that Porter's interference caused financial harm to the Michigan headquartered WVGC, therefore, the Court has an alternative basis for establishing personal jurisdiction over Porter under § 600.705(2). Plaintiffs alleged that Porter undertook certain actions to induce a third party, Spartan Exploration, to breach its contract with Plaintiffs. Plaintiffs allege that those misrepresentations lead to the financial harm of WVGC, a corporation with its headquarters and principal place of business in Michigan corporations. Porter's out-of-state actions that lead to financial harm to a corporate citizen of Michigan satisfies Michigan's long arm statute. Thus, the Court has personal jurisdiction over Porter with respect to Count I as Plaintiffs' allegations

that Porter's acts caused tortious consequences to occur within the state.

The Court concludes that exercising personal jurisdiction over Porter and Gastar comports with the Due Process Clause of the Fourteenth Amendment. As addressed above, both Gastar and Porter had numerous contacts with the state of Michigan. Porter's affidavit establishes that Gastar's headquarters and principal place of business remained in Michigan until March of 2005, and Gastar held operating bank accounts in Michigan until the end of 2006. According to Robinson, Gastar began negotiating the PSA while in Michigan and retained Michigan based legal counsel for that purpose. Additionally, Robinson stated that Gastar continued to maintain records, bank accounts, administrative activities, and information technology services in Michigan until early 2006. Lambert stated that Gastar employed him, as well as others in Michigan, to perform accounting and administrative services through 2006. Lambert recalled regularly corresponding with Gastar employees regarding the PSA and assisting Gastar with its financial statements between May of 2005 and early 2007.

With respect to Porter, Porter acknowledged that he had been the President and CEO of Gastar from February of 2004. He further acknowledged that Gastar did not relocate its principal place of business to Houston, Texas until March of 2005. Porter also acknowledged that he traveled to Michigan. Additionally, Lambert recounted that Porter attended meetings in Michigan, conducted business through Gastar's Mt. Pleasant headquarters, and visited the facilities more than a dozen times. Lambert recalls that Porter visited as recently as in January of 2007.

In light of these contacts, exercising personal jurisdiction over Defendants does not "offend traditional notions of fair play and substantial justice." At a minimum, Gastar maintained its principal place of business in Michigan until February of 2005 and continued some form of contact

with the state until late 2006. Likewise, Porter acted as an officer for a company with a Michigan based company until February of 2005 and maintained sufficient contacts with the state through business correspondences, transactions, and business related travel to the state. Thus, the Court concludes that a Michigan court may exercise personal jurisdiction over Gastar and Porter with respect to Plaintiffs' claims.

C

In a diversity action, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). Though the most substantial portion of the events may occur in one district, venue may still be proper in any forum where a substantial portion of the events occurred. *First of Michigan v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998).

Gastar contends that the proper venue for Count VI is the Southern District of Texas.[4] Gastar asserts that the action is local in nature, as Count VI seeks title to real property in the Southern District of Texas, and because a substantial portion of the events took place there.

Under the "substantial events" test, Plaintiffs' complaint adequately establishes the Eastern District of Michigan as a proper venue to hear this action. Count VI alleges that Gastar breached the June 16, 2005 PSA and requests payments for the alleged breach. Though the Southern District of Texas may be a proper venue for this claim, this district is a proper venue as well.

Geostar, as a party to the PSA, likely undertook substantial actions in this district as a result of the alleged breach. Geostar contends that the parties negotiated the PSA in this district. The terms

---

[4] Gastar and Porter moved to dismiss tortious the interference with contract claim (Count I) for lack of venue. The venue challenge to Count I is moot considering the Court's granting of its motion to dismiss Count I for failure to state a claim.

and intent of the parties will likely be at the center of Geostar's breach of contract claim, thus, the negotiation of the agreement is in and of itself a substantial event. Likewise, many of the significant events relative to Geostar's actions are likely to have taken place in this district because its principal place of business is in this district. The Court concludes that Geostar's allegations relative to the alleged breach of the PSA meets the "substantial events" test such that the Eastern District of Michigan is a proper venue to hear this matter. Thus, the Court will deny Gastar's motion to dismiss Count VI for lack of venue.

D

Finally, Gastar contends that the Court should dismiss the breach of contract claim concerning the PSA, Count VI, because Geostar failed to join parties with an interest that may be adversely affected by a judgment in favor of Geostar. In Count VI, Plaintiffs request multiple forms of relief including a Gastar payment of $20,000,000.00, a determination that Gastar breached the PSA, the awarding of "farm-in" interests and the granting of rights and real property in the Travis Peaks property, and further damages.

A party is indispensable if (1) complete relief can not be accorded to the parties or (2) the party claims an interest in the subject matter of the action and the court's disposition would impair the party's interest or subject the party to inconsistent outcomes. FED. R. CIV. P. 19(a). If a party is indispensable, then the Court must determine whether the case should proceed in their absence.

> If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's

absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED. R. CIV. P. 19(b)

Gastar contends that parties holding interests in the subject oil and gas leases have not been joined. Specifically, Gastar asserts that Gastar Exploration Texas LP, Presco, Inc., Chesapeake Exploration Limited Partnership, and Navasota Resources (collectively "Third Party Entities") all have interests that could be adversely affected. Gastar contends that Geostar seeks relief that would affect the Third Party Entities' ownership rights. Geostar seeks the "farm-in" rights to the Texas property that Gastar contends would burden the leases held by the Third Party Entities. Moreover, Gastar contends that joinder of the Third Party Entities is not feasible because the Court lacks personal jurisdiction over them or their joinder would destroy the Court's subject matter jurisdiction.

Geostar contends that Gastar has not demonstrated that the parties are indispensable under the requirements of FED. R. CIV. P 19(b). Moreover, it asserts that Gastar's contention that the Third Party Entities will be adversely affected is conclusory and without evidentiary support. Moreover, Geostar contends that Gastar failed to reveal that two of the Third Party Entities are wholly-owned subsidiaries of Gastar.

The Court concludes that Gastar has not adequately demonstrated that failure to join the Third Party Entities would adversely affect their interests or subject the parties to inconsistent outcomes. Gastar did not indicate the manner, with specificity, that a disposition in favor of Geostar would impair the Third Party Entities' interests or subject them to inconsistent outcomes. The Court agrees that Gastar's contentions are conclusory and without sufficient support.

Moreover, Gastar also failed to persuade the Court that the parties are indispensable under the factors set forth in FED. R. CIV. P. 19(b). From the limited information provided, the Court does

not have a basis to conclude that a judgment in favor of Geostar will necessarily prejudice the Third Party Entities in any significant manner. Additionally, considering the legal and equitable remedies that Geostar seeks, the Court believes that it can tailor its judgment to alleviate any possible prejudicial effect. Finally, dismissal of Geostar's claim may subject it to the possibility of litigating the issue in multiple jurisdictions considering the citizenship of the parties. As Gastar points out, each of the Third Party Entities raise subject matter jurisdiction and personal jurisdiction challenges that produce a situation where a single proceeding is infeasible. Thus, the Court will deny Gastar's motion to dismiss for failure to join indispensable parties.

E

Gastar moved for a more definite statement concerning Counts I, IV, and V. As discussed above, the Court will grant Gastar's motion to dismiss for failure to state a claim. Thus, the motion for a more definite statement is moot.

IV

Accordingly, it is **ORDERED** that Gastar's motion to dismiss [dkt. # 5] is **GRANTED** in part and **DENIED** in part. Counts I, IV, and V are **DISMISSED** for failure to state claim.

It is further **ORDERED** that Russell Porter's motion to dismiss [dkt. # 12] is **GRANTED** in part and **DENIED** in part. Count I is **DISMISSED** with respect to Plaintiff Geostar. Counts IV, V, and VI are **DISMISSED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 15, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 15, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS